598 A.2d 306

**COMMONWEALTH of Pennsylvania**

v.

**Daniel NATION, Appellant.**

Superior Court of Pennsylvania.

Argued May 8, 1991.

Filed Oct. 24, 1991.

---

496

Lyn R. Bailey, Asst. Public Defender, Lancaster, for appellant.

Brian E. Chudzik, Asst. Dist. Atty., Lancaster, for Com.

Before ROWLEY, President Judge, and CIRILLO and JOHNSON, JJ.

ROWLEY, President Judge:

This is a timely appeal by Daniel Nation from a judgment of sentence imposed following his conviction of possession with intent to deliver cocaine. Appellant argues that the trial court erred in refusing to suppress evidence as fruit of the poisonous tree. In support of this argument, appellant has presented two issues for our review:

1) whether a search warrant is illegal when, after an arrest on a fugitive warrant, a search warrant is requested that lists as probable cause the facts of the fugitive status of the arrestee, and identifies as items to be searched for, documentation of aliases and movement of the fugitive; and

2) whether the first search warrant was facially deficient since it failed to provide any substantiated basis to believe that the desired documents would be found at the location to be searched.

Having thoroughly reviewed the record and considered the arguments presented, we vacate the judgment of sentence and remand this case for a new trial.

## I. FACTUAL HISTORY

The scope of review of a suppression court's denial of a motion to suppress is firmly established.

The suppression court must make findings of fact and conclusions of law in determining whether evidence was obtained in violation of the defendant's rights. The burden of proving the admissibility of the evidence lies on the Commonwealth's shoulders; the standard by which the court determines the legitimacy of the search and seizure,

and hence the admissibility of the evidence whose suppression has been moved, is that of the preponderance of the evidence. Pa.R.Crim.P. 323(h). On appeal we must determine whether the record supports the factual findings of the suppression court, as well as determine the reasonability of any inferences and legal conclusions drawn from the court's findings of fact. *Commonwealth v. Goodwin*, 460 Pa. 516, 522, 333 A.2d 892, 895 (1975); *Commonwealth v. Bundy*, 458 Pa. 240, 328 A.2d 517 (1974); *Commonwealth v. Sharpe*, 449 Pa. 35, 296 A.2d 519 (1972); *and see Commonwealth v. Burgwin*, 254 Pa. Super. 417, 386 A.2d 19 (1978) (Opinion in Support of Reversal, per Price, J.).

In considering whether the record supports the court's finding of facts we must restrict ourselves to reviewing the evidence presented by the Commonwealth and so much of the evidence of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. *See Commonwealth v. O'Bryant*, 479 Pa. 534, 537, 388 A.2d 1059, 1061 (1978); *Commonwealth v. Hughes*, 477 Pa. 180, 383 A.2d 882 (1978); *Commonwealth v. Seibert*, 274 Pa.Super. 184, 418 A.2d 357 (1980). In addition, where the suppression court's findings are amply supported by the record they may not be disturbed on appeal. *Commonwealth v. O'Bryant, supra; Commonwealth v. Bundy, supra; Commonwealth v. Seibert, supra.*
*Commonwealth v. Eliff*, 300 Pa.Super. 423, 428–29, 446 A.2d 927, 929–30 (1982). In the instant case, the defense presented no witnesses at the suppression hearing, and the Commonwealth's evidence remained uncontradicted.

In light of the foregoing standard of review, the facts of the instant case are as follows. In late July, 1989, an unidentified tenant of the Covered Bridge Apartments informed Officer Donald Metzger that a fellow tenant, Herbert Curtis, was wanted by law enforcement authorities in Maryland on a charge of murder. S.T. 1/10/90, at 10–11, 38–39. Officer Metzger, who is a Hempfield Township police officer and a member of the county's drug task force, contacted the manager of the Covered Bridge Apartments,

looked at the lease signed by Curtis, and copied down Curtis' date of birth. S.T. 1/10/90, at 40.

He ran a computer search for outstanding warrants issued for Herbert Curtis but found none. S.T. 1/10/90, at 37. Officer Metzger spoke again to the unidentified tenant, who informed him that Herbert Curtis also used the last name of "Brown." Officer Metzger ran a computer search for outstanding warrants issued for a person named Brown who had the date of birth which he copied from the lease. This search revealed that an outstanding warrant had been issued for Daniel Brown, who was wanted for a parole violation following a second degree murder conviction in Maryland. Officer Metzger then telephoned Trooper Johnson of the Maryland State Police, Fugitive Unit, who faxed him a list of Daniel Brown's aliases along with Daniel Brown's photograph and fingerprints. S.T. 1/10/90, at 11, 27, 41–42. However, the latter two items were nearly unreadable. S.T. 1/10/90, at 27, 41. Officer Metzger contacted the Lancaster City Police who gave him a photograph and fingerprints of Daniel Brown and told him that Daniel Brown had legally changed his name to Daniel Nation. S.T. 1/10/90, at 41–42.

On August 2, 1989, at 5:14 p.m., Officer Metzger and Detective Walters went to the Covered Bridge apartments. They observed appellant, who was accompanied by a black female, drive into the parking lot in a Mercury Topaz. Appellant's features were similar to those in the photograph of Daniel Brown. The officers advised appellant that he was wanted as a fugitive from justice by the State of Maryland. The officers asked appellant to go back to the police station with them, and he agreed. At the station, the officers observed that appellant's fingerprints appeared to match those of Daniel Brown. While in custody, appellant admitted that he was Daniel Nation. S.T. 1/10/90, at 12, 29. Appellant was placed in the Lancaster County jail.

On August 3, 1989, at 2:30 p.m., while appellant was in jail, Officer Metzger obtained search warrant No. F–20921 ("Warrant I") to search appellant's apartment for documents verifying appellant's identity and aliases and/or

pertaining to appellant's movements while he was a fugitive. The affidavit of probable cause for the warrant stated as follows:

> # 1 That Daniel Brown also known as Daniel Nation, Daniel Sundel Nation, Gerald Sherrod, Herbert Curtis is wanted by the State of Maryland for Parole Violation and is wanted on a bail forfeiture for failing to appear on charges in the State of Maryland. Daniel Brown has an extensive criminal history that included a conviction for 2nd degree Murder and violations of the Maryland drug laws. Daniel Brown has been wanted by the State of Maryland on warrant(s) since Feb., 1989. An investigation by the East Hempfield Twp. Police Dept. revealed that Daniel Brown was living at N 2056 Swarr Run Rd., East Hempfield Twp. a unit of the Covered Bridge Apt. complex. Brown rented the Apt. using the name; Herbert Curtis, he indicated that he would reside there with a Terry Cohen, to date nothing is known about Terry Cohen. Daniel Brown was arrested by the affiant and others on 2 Aug., 1989 as he arrived in a vehicle at the Hempfield Twp. Apt. At the time of the arrest Brown had identification in the name; Herbert Curtis.
>
> # 2 Although Brown has admitted his name, and is charged with Fugitive from Justice, it is felt that **additional documentation as to his variety of names, and his movements will assist in determining his intent as a fugitive and the extent that he went to remain so.**

Affidavit, 8/3/89 (emphasis supplied). Warrant I authorized the police to search for:

> Any documentation that tends to affirm the identity of Daniel Brown, also known as Daniel Nation, Daniel Sundel Nation, Gerald Sherrod, Herbert Curtis. Any documentation that tends to show the movements of the above subject while wanted on warrants by the State of Maryland.

Warrant I, 8/3/89.

On August 3, 1989, at 2:45 p.m., Officer Metzger, accompanied by Detectives Walters and Blatt, who are also mem-

bers of both the Hempfield Township police department and the Lancaster County Drug Task Force, executed Warrant I. They found numerous papers bearing the names of Daniel Nation, Daniel Brown, and Herbert Curtis. S.T. 1/10/90, at 16. While searching a closet, the officers discovered a box containing drug paraphernalia. The officers immediately stopped the search, and while Detectives Walters and Blatt remained at appellant's apartment, Officer Metzger obtained search warrant No. F–20923 ("Warrant II") to search appellant's apartment for controlled substances, drug paraphernalia, and assets related to the sale of drugs. The probable cause belief for Warrant II was as follows:

> During the execution of a legal Search Warrant, issued on August 3, 1989 by District Magistrate Richard A. Sheetz, Search Warrant No. F20921, this Officer observed Drug Paraphernalia and items used for the manufacturing of Controlled Substances. This officer was looking for documentation when these items were located. Also observed were two (2) locked safes and two (2) locked money boxes, it is believed that documentation relating to the identity of the person and documentation of Drug Assets and Controlled Substances are in the boxes and safes.

Affidavit 8/3/89. On August 3, 1989, at 4:23 p.m., the officers executed Warrant II and discovered, among other things, $108,934.00 in United States currency, over 1,000 grams of cocaine, a $100.00 counterfeit bill, a .25 caliber handgun, and various drug paraphernalia.

Appellant was arrested and charged with possession with intent to deliver cocaine. He filed a motion to suppress, as fruit of the poisonous tree, the evidence seized pursuant to Warrant II. Following the denial of his suppression motion, appellant was convicted in a non-jury trial of possession with intent to deliver cocaine. Post-trial motions were also denied, and appellant was sentenced to seven to twenty years imprisonment.

## II. FUGITIVE STATUS

■ As a person whose parole was revoked after he left Maryland without the permission of his parole officer, appellant was subject to extradition from Pennsylvania as a fugitive from justice. *Commonwealth v. Hendrick,* 430 Pa. 575, 578 n. 2, 243 A.2d 438, 439 n. 2 (1968). Under the Uniform Criminal Extradition Act, 42 Pa.C.S.A. § 9121 *et seq.,* appellant had the right to require that his identity as the person named in the extradition requisition be established by the weight of the credible evidence. *Commonwealth ex rel. Coades v. Gable,* 437 Pa. 553, 264 A.2d 716 (1970); *Commonwealth ex rel. Edgar v. Davis,* 425 Pa. 133, 136, 228 A.2d 742, 744 (1967). The Commonwealth, as the asylum state, is authorized to investigate demands made by the demanding state. 42 Pa.C.S.A. § 9125. Further, the Commonwealth has the duty to ascertain that the person being held by the Commonwealth is the person charged with the crime in the demanding state. 42 Pa.C.S.A. § 9141. The Commonwealth is also authorized to arrest fugitives prior to requisition. 42 Pa.C.S.A. § 9134.

■ In the instant case, appellant argues that documents pertaining to one's status as a fugitive are not evidence of a crime under Rule of Criminal Procedure 2002[1] such that a search warrant may legally issue.[2] Rule 2002 provides as follows:

**1.** The Federal Rules of Criminal Procedure are not applicable to proceedings involving the extradition and rendition of fugitives. F.R.Crim.P. 54(b)(5), 18 U.S.C.A. (1976). Although the Pennsylvania Rules of Criminal Procedure are inapplicable to juvenile proceedings, domestic relations proceedings, and parole revocation hearings, there is no indication that they are inapplicable to proceedings involving fugitives. *See* Pa.R.Crim.P. 1, 42 Pa.C.S.A. (1989).

**2.** Appellant also contends that Warrant I was merely a pretext because, in executing Warrant I, the police officers were actually looking for drugs. The police had investigated appellant in early July of 1989, after receiving an informant's tip that appellant was a drug dealer. However, the police were unable to gather sufficient information to establish probable cause to arrest appellant. Appellant's Brief, at 9–10; S.T. 1/10/90, at 36. Since appellant has failed to preserve the "pretext" issue in his post-trial motions and in his statement of

### Rule 2002.  Purpose of Warrant

A search warrant may be issued to search for and to seize:

(a) contraband, the fruits of a crime, or things otherwise criminally possessed;  or

(b) property which is or has been used as the means of committing a criminal offense;  or

(c) property which constitutes evidence of the commission of a criminal offense.

Appellant contends that documents relating to one's status as a parole violator or fugitive are not "evidence of the commission of a criminal offense," because one does not commit a "crime" by being a fugitive or violating parole.

█ Appellant correctly notes that being a fugitive is not a crime under the Crimes Code. *See Commonwealth ex rel. Marshall v. Gedney,* 456 Pa. 570, 321 A.2d 641 (1974); *Commonwealth ex rel. Kelly v. Aytch,* 254 Pa.Super. 28, 34–35, 385 A.2d 508, 511 (1978).  Appellant's crime was not in his status as fugitive.  Rather, appellant's status as a fugitive stemmed from his parole violation for the underlying crime of second degree murder. *See Commonwealth ex rel. Lattimore v. Gedney,* 240 Pa.Super. 226, 233, 363 A.2d 786, 790 (1976) (under Uniform Criminal Extradition Act, accused is imprisoned by reason of offense charged in the demanding state;  crime charged is that committed in the demanding state).  As the asylum state, the Commonwealth is required to ascertain that the person being extradited is the person charged with the crime in the demanding state.  42 Pa.C.S.A. § 9141; *Lattimore supra,* 240 Pa.Superior Ct. at 237, 363 A.2d at 792.  Evidence of a fugitive's identity aids the Commonwealth in determining whether the fugitive and the person listed in the demanding papers are one and the same.  Identification evidence constitutes evidence of a criminal offense in that it identifies the person held as the person indicted for the underlying criminal offense in the demanding state.

questions presented, we are unable to address it.  Pa.R.Crim.P. 1123; Pa.R.A.P. 2116(a).

■ Our inquiry does not end with this conclusion, however. In the instant case, the Commonwealth had sufficient proof of appellant's identity before Warrant I was issued. The Commonwealth had appellant's photograph and fingerprints, and appellant had admitted his name. *See Commonwealth ex rel. Coades v. Gable, supra,* 437 Pa. at 555–56, 264 A.2d at 718 (identification evidence need not establish that the person held perpetrated the alleged crime; it need only establish that the person held is the person indicted); *Commonwealth ex rel. Reyes v. Aytch,* 246 Pa.Super. 287, 369 A.2d 1325 (1976) (identification evidence, that appellant answered to name, knew birth-date, and fit physical description of person in demanding papers, sufficient). Moreover, Warrant I was not issued so that the Commonwealth could ascertain appellant's identity. The affidavit supporting Warrant I stated:

> #2 Although Brown has admitted his name, and is charged with Fugitive from Justice, it is felt that additional documentation as to his variety of names, and his movements will assist in determining his *intent* as a fugitive and the *extent* that he went to remain so.

Affidavit 8/3/89 (emphasis supplied). Appellant's "intent as a fugitive" and "the extent that he went to remain so" are not proper objects of a search warrant under Rule 2002 of the Pennsylvania Rules of Criminal Procedure. Accordingly, we are constrained to conclude that Warrant I was illegal. Since Warrant I was illegal, the police officers' entry into appellant's apartment to execute Warrant I was unlawful. The drug paraphernalia observed by the police officers at the time of their unlawful entry formed the sole basis for obtaining Warrant II. Consequently, the evidence seized pursuant to Warrant II should have been suppressed as fruit of the poisonous tree. Appellant's judgment of sentence must be vacated and a new trial awarded.[3]

**3.** Appellant also argues that the evidence seized pursuant to Warrant II should be suppressed as fruit of the poisonous tree because Warrant I failed to provide any substantiated basis to believe that the desired documents would be found at the location to be searched. In light of our conclusion that a new trial is required, we need not address this

Judgment of sentence vacated; case remanded for new trial; jurisdiction relinquished.

CIRILLO, J., filed a dissenting opinion.

CIRILLO, Judge, dissenting.

I respectfully dissent, and would affirm appellant Daniel Nation's judgment of sentence.

The majority concludes that Warrant I is illegal, and that therefore the evidence seized pursuant to Warrant II was "fruit of the poisonous tree." The majority first determines that identification evidence is a proper object of a search warrant. It then concludes that because the Commonwealth had Nation's fingerprints and an admission of his identity, that Warrant I, which sought additional documentation of Nation's identification and use of aliases, was not issued for the purpose of ascertaining Nation's identification and was therefore illegal. I disagree with the latter part of this analysis.

Pursuant to the Uniform Criminal Extradition Act, 42 Pa.C.S. § 9121 *et seq.*, ("the Act"), the Commonwealth must establish the identity of the alleged fugitive by a preponderance of the evidence; this is a necessary prerequisite to extradition. *See* 42 Pa.C.S. § 9123; *see also Commonwealth ex rel. Lattimore v. Gedney*, 240 Pa.Super. 226, 234, 363 A.2d 786, 792 (1976) (the Commonwealth must prove, before extradition will be granted, that the person being extradited is the person demanded). Section 9141 of the Act prohibits the Commonwealth from inquiring into the guilt or innocence of the accused as to the crime charged in the demanding state, but specifically allows for inquiry "as it may be involved in identifying the person held as the person charged with the crime." 42 Pa.C.S. § 9141. *See*

issue. Nonetheless, we conclude that Warrant I's affidavit established with a fair probability that the objects of the search would be found in appellant's apartment. *See Commonwealth v. Jones*, 391 Pa.Super. 292, 570 A.2d 1338 (1990); *Commonwealth v. Hutchinson*, 290 Pa.Super. 254, 434 A.2d 740 (1981); *Commonwealth v. Millard*, 273 Pa.Super. 523, 417 A.2d 1171 (1979).

*Commonwealth ex rel. Coades v. Gable,* 437 Pa. 553, 264 A.2d 716 (1969); *Commonwealth ex rel. Colcough v. Aytch,* 227 Pa.Super. 527, 323 A.2d 359 (1974). Pennsylvania Rule of Criminal Procedure 2002 provides that a search warrant may be issued to search for and to seize

(a) contraband, the fruits of a crime, or things otherwise criminally possessed; or

(b) property which is or has been used as the means of committing a criminal offense; or

(c) *property which constitutes evidence of the commission of a criminal offense.*

Pa.R.Crim.P. 2002 (emphasis added). The first part of the majority's analysis concludes that "[i]dentification evidence constitutes evidence of a criminal offense in that it identifies the person held as the person indicted for the underlying criminal offense in the demanding state." Majority opinion, p. 8. Therefore, identification evidence sought to support a warrant of extradition under the Act is a proper object of a search warrant under Pa.R.Crim.P. 2002. This is a rational and just interpretation of both the Act and our rules of criminal procedure. Without the investigative tools to acquire evidence to support a warrant of extradition, the Commonwealth is unable to effect the purposes of the Act. In my opinion, the analysis need go no further. The majority, however, extends its inquiry into an evaluation and characterization of the objects sought in Warrant I, concluding that the evidence sought did not fall within Pa. R.Crim.P. 2002(c).

The affidavit supporting Warrant I acknowledges that [a]lthough [the defendant] has admitted his name, and is charged with Fugitive from Justice, it is felt that *additional documentation* as to his variety of names, and his movements will assist in determining his intent as a fugitive and the extent that he went to remain so. (Emphasis supplied).

The warrant authorized the police to search for:

*Any documentation that tends to affirm the identity* of Daniel Brown, also known as Daniel Nation, Daniel Sun-

del Nation, Gerald Sherrod, Herbert Curtis. Any documentation that tends to show the movements of the above subject while wanted on warrants by the State of Maryland. (Emphasis supplied).

Essentially, the majority reasons that this "additional documentation" was not evidence of identity and concludes, therefore, that the "additional documentation" was not a proper object of a search warrant under Pa.R.Crim.P. 2002(c). I would find that the police department's decision to secure additional documentation of Nation's identification and various aliases does not render the warrant illegal under Pa.R.Crim.P. 2002(c), or contravene the scope of inquiry allowed under section 9141 of the Act. I disagree with the majority's presupposition that the Commonwealth's identification evidence on hand renders superfluous additional documentation of his identification and various other aliases.

As the majority notes in its recitation of the facts, Officer Metzger's computer search revealed outstanding warrants for a person named Herbert Brown, whose birth date was the same as that of Herbert Curtis. An unidentified person informed Officer Metzger that Herbert Curtis also used the alias "Herbert Brown." A computer search revealed that a "Daniel Brown" was wanted for a parole violation following a murder conviction in Maryland. Officer Metzger obtained a photograph and fingerprints of Daniel Brown from the Lancaster City Police. Officer Metzger was also informed that Daniel Brown had legally changed his name to "Daniel Nation." While in custody, the defendant admitted that he was Daniel Nation. The additional documentation as to the defendant's variety of names is, in these circumstances, evidence of identity for purposes of an extradition hearing. See 42 Pa.C.S. § 9141. Such evidence is essential to complete the identification chain from Herbert Curtis, to Herbert Brown, to Daniel Brown, and finally to Daniel Nation. In other words, this information is necessary to establish that Herbert Curtis is the person named in the extradition

warrant.  *See Gable, supra; Gedney, supra; Aytch, supra.*

In summary, I would find that the evidence sought under Warrant I was proper under Pa.R.Crim.P. 2002(c) and did not exceed the scope of inquiry under section 9141 of the Act.  Accordingly, I would conclude that the evidence seized pursuant to Warrant II was not "fruit of the poisonous tree," and judgment of sentence should be affirmed.